**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROBERT R. MEADES,       )
                            )
         Petitioner,      )
                            )
      v.                )      C.A.No. 07-223-***
                            )
THOMAS L. CARROLL, et al.,   )
                            )
         Respondents.   )

**ANSWER**

Pursuant to the Rules Governing § 2254 Actions, 28 U.S.C. foll. § 2254,

Respondents state the following in response to the petition for writ of habeas corpus:

<u>Facts</u>

At approximately 2:00 p.m. on March 25, 1982, Robert Meades entered the

Wilmington Savings Fund Society ("WSFS") in the Penn Mart Shopping Center in New

Castle, Delaware. Meades went first to the customer service station, and then into the

customer line. Meades then approached Gwendolyn Washington at her teller station. As

Meades walked up to Washington's station, he threw a bag on the counter and directed

Washington to "put your money in the bag." Meades then turned his back on

Washington, pulled a dark stocking mask over his face, turned back to Washington and

pointed a gun at her. Washington complied with Meades' demand, and placed

approximately $1,300 into the bag, along with a dye pack.

Meades then took his bag to the next teller station, that of Virginia Murray:

slamming the bag onto the counter, Meades told Murray to put money into the bag and

continued to brandish the gun. Murray and another teller, Dinah Mikulcik, put an

additional amount of cash into the bag.  Meades next took his bag to a third teller, Margaret Gocella, pointed the gun at her, again put the bag on the counter, leaned over the counter and stated "fill it up, bitch."  Gocella, with the assistance of another teller, placed approximately $1,600 into the bag, along with another dye pack.  Meades then returned to Mikulicik, again pointed the gun at her, and asked her if she had pulled the alarm.  Meades finally left the bank and instructed everyone inside to "hit the floor" as he fled.

<u>Procedural History</u>

On May 11, 1982, the New Castle County grand jury indicted Robert Meades on three counts of robbery in the first degree (11 *Del. C.* § 832) and one count of conspiracy in the second degree (11 *Del. C.* § 512).  (D.I. 1).[1]  A jury trial commenced in Superior Court on September 20, 1982, at the conclusion of which Meades was convicted of all charges.  (D.I. 12).  On November 8, 1982, Superior Court sentenced Meades to a total of 32 years imprisonment (10 years for each count of first degree robbery and 2 years for conspiracy, with each sentence to be served consecutively).  (D.I. 14).  Meades appealed his conviction, and on May 31, 1983, the Delaware Supreme Court affirmed the convictions.  *Meades v. State*, No. 365, 1982, (Del. May 31, 1983).  In a separate criminal action in 1984, Meades was charged with murder in the first degree, conspiracy in the first degree, and possession of a deadly weapon during the commission of a felony. Meades eventually pled guilty to promoting prison contraband (Crim. Act. No. IN 84-06-0061), and he was sentenced to an additional 10 years incarceration.

On July 31, 1987, Meades moved for a reduction of his sentence under Criminal Rule 35.  (D.I. 22).  On September 11, 1987, Superior Court denied Meades' motion.

---

[1] "D.I." references in this section are to the Superior Court's docket items (ID No. 8200289DI).

(D.I. 23). Meades appealed this decision, and on April 22, 1988, the Delaware Supreme

Court affirmed the judgment of Superior Court. *Meades v. State*, No. 334, 1987 (Del.

Apr. 22, 1988). Meades next filed a petition for writ of habeas corpus in this Court. *See*

Ex. A. In March 1989, the United States Magistrate Judge to whom the case had been

referred recommended dismissal. *Meades v. Young*, Civ. A. No. 88-233-JLL (D. Del.

March 14, 1989) (Ex. B). On April 5, 1989, the Court accepted and adopted the report

and recommendation, dismissing the petition for writ of habeas corpus. *Meades v.

Young*, Civ. A. No. 88-233. (D. Del. April 5, 1989).[2] On January 22, 1999, Meades filed

a second motion for reduction of sentence (D.I. 29); that motion was denied on March 15,

1999. (D.I. 30). On January 30, 2002, Meades filed a third motion for reduction of

sentence. (D.I. 31). On February 26, 2002, Superior Court denied this motion. (D.I. 32).

Meades appealed, and on May 2, 2002, the Delaware Supreme Court affirmed the

Superior Court's judgment. *Meades v. State*, No. 108, 2002 (Del. May 2, 2002). On

September 17, 2004, Meades filed a fourth motion to reduce his sentence. (D.I. 40).

Superior Court denied this motion on February 25, 2005. (D.I. 41).

On July 5, 2005, Meades filed a petition for writ of mandamus in Superior Court.

In that case, Meades sought to compel various Department of Correction officials to

credit him with additional amounts of meritorious good time credits.[3] On May 8, 2006,

Superior Court denied Meades' petition for writ of mandamus. Meades appealed the

---

[2] Meades filed another petition for writ of habeas corpus on December 16, 1991 against John Ellingsworth,
Warden of the Sussex Correctional Institution, and Charles Oberly, Attorney General of the State of
Delaware. On May 5, 1993, this Court dismissed Meades' petition on the basis that his claims related to
timely review of his federal detainer and should have been directed against the United States Parole
Commission. *Meades v. Ellingsworth*, Civ. A. No. 91-687 (D. Del. May 5, 1993).
[3] *Meades v. Hosterman*, Civ. Act. No. 05M-07-011.

denial of his petition, and on August 23, 2006, the Delaware Supreme Court affirmed the judgment of the Superior Court.[4]

<u>Argument</u>

In papers dated April 19, 2007, and filed on April 26, 2007, Meades initiated the instant petition for writ of habeas corpus. (D.I. 1). Although Meades describes four "grounds" for relief in his petition, it is apparent that he has only one claim: that he has a state-created liberty interest to receive meritorious good time credits; that the Department of Correction ("DOC") has failed to credit him all credits owed to him for participation in rehabilitative programs; and that, therefore, he should already have been conditionally released from incarceration. Meades has failed to allege a cause of action cognizable in federal habeas. Meades' complaint fundamentally is one that alleges that a state agency has failed to follow state law. Such a claim does not raise a federal constitutional issue relevant to the fact or duration of Meades' confinement.

In *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1975), the United States Supreme Court held that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus. *Preiser* dealt with a scenario where an inmate was statutorily entitled to good time credits, and because of misconduct in prison, the inmate had those credits revoked by prison authorities. *Id*. at 477-78. A challenge to a disciplinary hearing that resulted in the loss of good-time credit is properly asserted as a claim for habeas corpus relief because the claim impacts the length of a prisoner's sentence. *See, e.g., Torres v. Fauver*, 292 F.3d 141, 150-51 (3d Cir. 2002).

---

[4] *Meades v. Hosterman*, No. 239, 2006 (Del. Aug. 23, 2006).

Meades, however, has not alleged a revocation of earned credits, but rather a failure by correctional authorities to attribute him credits according to his interpretation of state law. Fundamentally, Meades' claim is not a federal issue. The Constitution does not guarantee good-time credit, but a state may statutorily create a liberty interest in good-time credit, thus invoking the Fourteenth Amendment, and thus the prisoner cannot be deprived of earned good-time credit without procedural due process. *Wolff v. McDonnell*, 418 U.S. 539, 94 (1974). State law, however, determines whether "good time credits constitute a protected liberty interest." *Sup't, Mass. Correctional Inst. v. Hill*, 472 U.S. 445, 105 (1985). This Court has held that the Delaware parole statute does not create a protected liberty interest, such that the denial of parole does not give rise to a cause of action in federal habeas. *See Eskridge v. Casson*, 471 F.Supp. 98, 101 (D. Del. 1979). Even more similar to the present case, this Court has held that Delaware law does not create a liberty interest in the right to participate in work or education programs while incarcerated. *See Nicholson v. Carroll*, 390 F.Supp. 2d 429, 435 (D. Del. 2005). Meades' contention that he should have been credited with more meritorious good time credits for participation in rehabilitative programs while incarcerated likewise does not raise a federal claim. *See Brown v. Mahoney*, 71 F. App'x 722, 727 (9th Cir. 2003) (liberty interest in good time credits arises only when rules in force provide for granting of good time credits).

To the extent that Meades' claim can be construed to implicate a due process liberty interest that is cognizable in federal habeas, that claim is exhausted. *See Smith v. Digmon*, 434 U.S. 332 (1978). Meades presented his complaint that he had not been awarded sufficient meritorious good time credits in a petition for writ of mandamus to

Superior Court.  On May 8, 2006, after a hearing on the matter, Superior Court concluded

that Meades had not established his right to be credited with additional good time.  The

Delaware Supreme Court affirmed the judgment of the Superior Court that Meades had

failed to establish a clear legal right to additional good time credits.   The Delaware

Supreme Court's decision that Meades had failed to establish that he was entitled to

additional good time credits amounted to a reasonable application of clearly established

federal law for purposes of section 2254(d)(1).

     The sentences that Meades is presently serving were imposed before the

enactment of the Truth-in-Sentencing Act in 1989 ("TIS").  Under pre-TIS law (11 *Del.

C.* § 4372 (Repl. 1979)),[5] an inmate automatically received a reduction of his sentence for

good behavior at the following rate: 5 days per month in his first year of incarceration; 7

days per month in his second year of incarceration; 9 days per month in his third year of

incarceration; and 10 days per month in every subsequent year of incarceration.  This

good time credit to reduce the incarcerated portion of one's sentence was given on all

non-mandatory sentences.  Pre-TIS sentenced inmates could also earn additional

meritorious good time credits for participation in prison work programs and for

exceptional achievement in approved rehabilitative programs.  *See* 11 *Del. C.* § 4374

(Repl. 1979).  Section 4374 provided that regardless of the number of programs in which

an inmate participates, he could not earn more than 5 days per month in meritorious good

time; the 5 days each month are in addition to the statutory good time earned under

section 4372.

---

[5] Sections 4372 and 4374 were redesignated in 1980 as section 4382 and 4384, respectively.  62 Del. Laws
ch. 317.

In Meades' case, DOC credited him with a total of 4932 days of statutory good time. Meades has not disputed that calculation. Furthermore, DOC credited Meades with a total of 322 days of meritorious good time. (*See* D.I. 1 at 8 (indicating DOC has been awarding 2 days of meritorious good time credits each month)). DOC acknowledged that it did not credit with Meades with 5 days of meritorious good time each month of his incarceration, but the decision to award fewer than 5 days of meritorious good time was based on the number of days and hours that Meades actually worked or participated in programs. In order for an inmate to earn the maximum 5 days per month of meritorious good time, the inmate would have to work more than 5 hours a day in at least 21 days of the month. *See Affidavit of Cindy Wright*. The Due Process Clause protects the state created right to meritorious good time if the program is approved and otherwise satisfies the regulations. The Delaware Supreme Court's decision is not unreasonable under 2254(d)(1): the court determined that Meades had not satisfied the criteria for receiving 5 days (in contrast to 2 days). That decision by the Delaware Supreme Court is a reasonable application of clearly established federal law.

Meades cannot demonstrate that the Delaware Supreme Court's decision amounted to an unreasonable application of clearly established federal law. Under 28 U.S.C. § 2254(d), a federal court can only issue a writ of habeas corpus if the state court decision being challenged was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Contrary to … clearly established federal law" means "diametrically different," opposite in character or nature," or "mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "Moreover, the state court judgment must

not merely be contrary to law as articulated by any federal court. It must contradict

'clearly established' decisions of the United States Supreme Court alone." *Fischetti v.*

*Johnson*, 384 F.3d 140, 147 (3d Cir. 2004). "An unreasonable application of Supreme

Court precedent occurs when a state court applies the correct rule to specific facts in an

objectively unreasonable way." *Id*. at 148. "Touchstone precedents are not to be

examined by looking to broad pronouncements or generative principles in [Supreme

Court precedent]." *Id*. Meades simply cannot demonstrate that the Delaware Supreme

Court's decision affirming the DOC's calculation of Meades' meritorious good time

credits was contrary to clearly established federal law.

      Meades' petition is also subject to dismissal as being untimely under 28 U.S.C. §

2244(d). Under section 2244(d), a one year limitation period applies "to an application

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State

court." In the context of state parole decisions and the forfeiture of good time credits, the

limitations period begins to run on "the date the factual predicate of the claim or claims

presented could have been discovered through the exercise of due diligence." 28 U.S.C. §

2244(d)(1)(D). *See, e.g, Kimbrell v. Cockrell*, 311 F.3d 361, 363-64 (5th Cir. 2002); *Redd*

*v. McGrath*, 343 F.3d 1077, 1084 (9th Cir. 2003) ("factual predicate" for claim not

determined by asking when inmate exhausted state remedies, but rather by inquiring into

when inmate could have learned of the factual basis of his claim through the exercise of

due diligence); *Wade v. Robinson*, 327 F.3d 328, 333 (4th Cir. 2003) (when inmate could

have discovered loss of good time credits by operation of law, date of parole revocation

served as triggering date for limitations period).

The Superior Court sentenced Meades on November 8, 1982. As early as 1986, Meades contends that he was not being credited with all meritorious good time due to him. (D.I. 1 at 9). Because Meades' conviction was final before the passage of AEDPA, the one-year limitations period on the filing of a petition for writ of habeas corpus by a state prisoner became effective on April 24, 1996; the limitations period began to run against Meades as of the date of enactment of AEDPA. *See, e.g., Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998); *Sena v. New Mexico Corrections*, 66 F. App'x 174, 176-77 (10th Cir. 2003); *Algenstedt v. Champion*, 42 F. App'x 129, 131 (10th Cir. 2002) (inmate who received monthly accounting of good time throughout incarceration should have been aware of calculation well before April 24, 1996); *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052 n.5 (C. D. Cal. 2005). Thus, the one-year period for the filing of any federal habeas petition by Meades expired on April 23, 1997. Meades' petition for writ of mandamus could not toll a habeas limitations period that had already expired. Likewise, Meades could not restart a limitations period that had already expired. *See, e.g., Moore v. Crosby*, 321 F.3d 1377, 1381 (11th Cir. 2003) ("A state application filed after expiration of the limitations period does not relate back so as to toll idle periods preceding the filing of the federal petition.").

A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court; Meades' petition is dated April 19, 2007. (D.I. 1). In the absence of proof respecting the date of delivery, that date is the presumptive date the petition was delivered to prison officials for mailing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003); *Woods v. Kearney*, 215

F.Supp.2d 458, 460 (D. Del. 2002). Meades' petition is thus untimely under section 2244(d). *See Woods*, 215 F.Supp.2d at 460.

Meades cannot save his untimely petition by invoking the doctrine of equitable tolling, as that doctrine only applies when: "(1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Meades has not articulated any basis under which the doctrine would arguably be appropriate, nor do Meades' own submissions suggest that such a doctrine has any application in the present case. On the contrary, Meades' pleadings suggest that he has disagreed with DOC's calculation of his meritorious good time from "1986 to 2004." (D.I. 1 at 9).

Finally, Meades' petition must be dismissed pursuant to 28 U.S.C. § 2244(b) which precludes the filing of successive petitions without authorization from the court of appeals. The United States Supreme Court has excluded from section 2244 claims that were not ripe for review at the time of filing of the first habeas petition. *See Panetti v. Quarterman*, __U.S. __, 2007 WL 1836653, at *12 (June 28, 2007). As explained above in relation to the timeliness of Meades' good time claim, he was aware of this issue as early as 1986. Meades' good time claim was, therefore, ripe in 1989 when he filed his first petition for writ of habeas corpus.

The Third Circuit addressed a similar factual scenario in *Benchoff v. Colleran*, 404 F.3d 812 (3d Cir. 2005). A subsequent habeas petition that challenges the administration of a sentence is not a second or successive petition within the meaning of § 2244 if the claim had not arisen or could not have been raised at the time of the prior

10

petition. *Id*. at 817.  In *Benchoff*, the inmate had already received denials of parole at the time he filed his first petition. *Id*. at 819.  The Third Circuit expressly held that an inmate is not excused from raising administration of sentence claims from a petition that attacks the legality of his conviction. *Id*.  Furthermore, simply because an administration of sentence claim may not have been exhausted when the prisoner files his first habeas petition, the prisoner may not withhold the claim to provide himself with a second habeas petition. *Id*., *citing Rose v. Lundy*, 455 U.S. 509, 521 (1982).  *See In re Minarik*, 166 F.3d 591, 604-05 (3d Cir. 1999) (unexhausted nature of claim does not excuse failure to present claim in first petition).

Several other courts of appeal have also held to be successive petitions administration of sentence claims where the inmate was aware of the factual predicate of those claims at the time of his initial habeas. *See Woodberry v. McKune*, 130 F. App'x 246, 246 (10th Cir. 2005); *Crone v. Cockrell*, 324 F.3d 833, 837 (5th Cir. 2003). *Cf., In re Cain*, 137 F.3d 234, 236-37 (5th Cir. 1998); *Hill v. State*, 297 F.3d 895, 898-99 (9th Cir. 2002) (not a successive petition when inmate could not have been aware of the administration of sentence claim at the time of initial petition).  Dismissal of Meades' claim here as a successive petition thus depends on a finding that Meades was aware of the rate at which DOC awarded him meritorious good time credits before he filed his first habeas petition in 1989.  Based on Meades' pleadings that the alleged improper calculation of meritorious good time started in 1986, and the fact that inmates can and do routinely request a copy of their offender status sheet that shows their short-term release date and amount of good time credits earned, Meades could have brought this

administration of sentence claim in his first habeas petition. The instant petition should thus be dismissed as a successive petition under § 2244(b).

A hearing took place regarding Meades' state petition for writ of mandamus on May 8, 2006. The hearing was recorded, but the proceeding has not been transcribed. In the event that this Court requires a transcript of the mandamus hearing, Respondents anticipate that such transcript could be produced within 90 days from the date of the Court's order.

Wherefore, Respondents request that Meades' petition for writ of habeas corpus be dismissed without further proceedings.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Gregory E. Smith_____
Gregory E. Smith, I.D. No. 3869
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Building
Wilmington, Delaware  19801
(302) 577-8398

Dated: July 6, 2007

FOR HABEAS CORPUS UNDER 28 U.S.C. 2254

_Robert R. Meades_

Name

_532177_

Prison Number

_Gander Hill Prison 1301 East 12th Street_
_Wilmington, Delaware._

Place on Confinement

United States District Court _Wilmington_ District of _Delaware_

Case No. _____

(To be supplied by Clerk of U. S. District Court)

_Robert R. Meades_ , PETITIONER

(Full Name)   (Include name under which you were convicted)

_Warden Howard Young_ , RESPONDENT

(Name of Warden, Superintendent, Jailor, or authorized person
having custody of petitioner)

and

THE ATTORNEY GENERAL OF THE STATE OF _Delaware, Wilmington_
_Charles Oberly III_ , ADDITIONAL RESPONDENT.

    (If petitioner is attacking a judgment which imposed a sentence to be
served in the future, petitioner must fill in the name of the state where
the judgment was entered.  If petitioner has a sentence to be served in the
future under a federal judgment which he wished to attack, he should file
a motion under 28 U.S.C. 2255, in the federal court which entered the
judgment.)

PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN
STATE CUSTODY

INSTRUCTIONS- READ CAREFULLY

(1)  This petition must be legibly handwritten or typewritten, signed by
     the petitioner under penalty of perjury. Any false statement of a
     material fact may serve as the basis for prosecution and conviction
     for perjury. All questions must be answered concisely in the proper

-2-

space on the form.  Where more room is needed to answer any question use the reverse side of the sheet.

(2) Additional pages are not permitted.  No citation of authorities need be furnished.  If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

(3) Upon receipt of a fee of $5.00 your petition will be filed if it is in proper order.

(4) If you do not have the necessary filing fee, you may request permission to proceed in forma pauperis, in which event you must execute the declaration on the last page, setting forth information establishing your inability to prepay the fees and costs or give security therefor. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

(5) The original and two copies of the petition should be forwarded to the Clerk of the Court.  THE CLERK WILL NOT FILE THE PETITION UNLESS IT CONFORMS TO THE ABOVE RULES AND THE PROPER NUMBER OF COPIES ARE RECEIVED.

(6) Only judgments entered by one court may be challenged in a single petition.  If you seek to challenge judgments entered by different courts either in the same state or in different states, you must file separate petitions as to each court.

(7) Your attention is directed to the fact that you must include all grounds for relief and all facts supporting such grounds for relief in the petition you file seeking relief from any judgment of con-viction.

(8) When the petition is fully completed, the original and two copies must be mailed to the Clerk of the United States District Court whose address is 844 King Street, Lock Box 18, Wilmington, DE  19801.

(9) Petitions which do not conform to these instructions will be returned with a notation as to the deficiency.

## PETITION

1. Name and location of court which entered the judgment of conviction under attack *Superior Court, Wilmington Delaware*

2. Date of judgment of conviction *September 21, 1922*

3. Length of sentence *32 years*        Sentencing Judge *Joseph T. Walsh*

4. Nature of offense or offenses for which you were convicted: *Three '3' Counts of First Degree Robbery, one count of conspiracy in the second degree.*

-3-

5. What was your plea?  (Check one)
   (a)  Not guilty     (✗)
   (b)  Guilty         ( )
   (c)  Nolo contendere  ( )
   If you entered a guilty plea to one count or indictment, and a
   not guilty plea to another count or indictment, give details: _____
   _____
   _____
   _____

6. Kind of trial: (Check one)
   (a)  Jury          (✗)
   (b)  Judge only    ( )

7. Did you testify at the trial?  Yes  (✗)    No  ( )

8. Did you appeal from the judgment of convictions?  Yes  ( )  No  ( )

9. If you did appeal, answer the following:
   (a)  Name of Court _Delaware Supreme Court_
   (b)  Result _Conviction Affirmed_
   (c)  Date of result _May 31, 1983_

   If you filed a second appeal or filed a petition for certiorari in the
   Supreme Court, give details: _Post Conviction Relief Rule 35 Appealed_
   _From Superior Court_
   _____

10. Other than a direct appeal from the judgment of conviction and
    sentence, have you previously filed any petitions, applications,
    or motions with respect to this judgment in any court, state or
    federal?   Yes  (✗)   No  ( )

11. If your answer to 10 was "yes" give the following information:
    (a)  (1)  Name of court _Delaware Supreme Court_
         (2)  Nature of proceeding _Post Conviction Relief Rule 35_

         (3)  Grounds raised _Defendants multiple convictions violated_
    _his constitutional rights and due-process. Convictions_
    _arose out of one bank robbery. Where in the case of_
    _Craig and Johnson, defendants were charge with_
    _1 count of robbery first degree after takeing_
    _money from '4' bank teller drawers._

-4-

    (4)   Did you receive an evidentiary hearing on your petition,
         application or motion?  Yes ( )  No  ⊗

    (5)   Result *Superior Court denied Rule 35*

    (6)   Date of result *September 11, 1987*

 (b)  As to any second petition, application or motion give the
    same information:

    (1)   Name of Court *Delaware Supreme Court*
    (2)   Nature of proceeding *Rule 35 Post Conviction Relief*

               *Defendants multiple convictions violated his*
    (3)   Grounds raised *Constitutional Rights and due-process*

    (4)   Did you receive an evidentiary hearing on your petition,
         application or motion?  Yes ( )  No  ⊗

    (5)   Result *Conviction Affirmed*
    (6)   Date of result *September 11, 1977*

 (c)  As to any third petition, application or motion give the same
    information:

    (1)   Name of court

    (2)   Nature of proceeding

    (3)   Grounds raised

 (d)  Did you appeal to the highest state court having jurisdiction the
    result of any action taken on any petition, application or motion:

-5-

(1) First petition, etc.  Yes (⊠)  No ( )
(2) Second petition, etc. Yes (⊠)  No ( )
(3) Third petition, etc.  Yes ( )   No ( )

(e) If you did <u>not</u> appeal from the adverse action on any petition, application or motion, explain briefly why you did not: _____

_____

_____

_____

_____

_____

_____

12.  State concisely every ground on which you claim that your are being held unlawfully.  Summarize <u>briefly</u> the facts supporting each ground.

CAUTION:  In order to proceed in the federal court, you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court.  As to all grounds on which you have previously exhausted state court remedies, you should set them forth in this petition if you wish to seek federal relief.  If you fail to set forth all such grounds in this petition, you may be barred from presenting them at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief.  You may raise any grounds which you may have other than those listed if you have exhausted all your state court remedies with respect to them.  However, <u>you should raise in this petition all available grounds</u> (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

If you select one or more of these grounds for relief, you must allege facts in support of the ground or grounds which you choose.  Do not check any of the grounds listed below.  The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b)  Conviction obtained by use of coerced confession.

(c)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim)

(d)  Conviction obtained by use of evidence obtained pursuant

-6-

to an unlawful arrest, (where the state has not provided a full and fair hearing on the merits of the Fourth Amendment claim.)

(e)  Conviction obtained by a violation of the privilege against self-incrimination.

(f)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)  Conviction obtained by a violation of the protection against double jeopardy.

(h)  Conviction obtained by action of a grand jury or petit jury which was unconstitutionally selected and impaneled.

(i)  Denial of effective assistance of counsel.

(j)  Denial of right of appeal.

A.  Ground one: _____

_____

1) Supporting FACTS  (tell your story briefly without citing cases or law): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

2)  Identify each court to which you have previously presented this ground, and if you have not previously presented it to any court write "NONE: _IDENTIFICATION FROM bank TELLER_

_ONE MRs Washington TAkEN by slATE police mAy have_

_bEEN suggEslEd since defendant wAs NoT idENtiFiyed_

_From ThAt sAmE previous liNE oF phoTogRaphs_

-7-

viewed by The bank Tellers earlyer after robbey
was committed. Identification is also questionable.
when persons Face was covered with mask during
robbery.

B.  Ground two: Conviction obtained by use of coerced confession.

_____

1) Supporting FACTS (tell your story briefly without citing cases or
   law):
Defendant was previously seen again by one
Miss Washington and Delaware State police. while he
was in The Custody of prison officers out side The
court room in handcuffs during hearing To suppress
The identification of defendant

_____

_____

_____

_____

_____

_____

_____

2) Identify each court to which you have previously presented this ground,
   and if you have not previously presented it to any court write "NONE"
Delaware Superior Court, Post Conviction Rule 35 and
Supreme Court

_____

_____

_____

_____

C.  Ground three: Convictions violated due-process and
Equal protection

1) Supporting FACTS (tell your story briefly without citing cases or law:

-8-

DEFENDANT Robert R. Meades was charge and convicted of '3' counts of robbery in the Frist degree during a bank robbery in which money was demanded and Taken From '3' Tellers separately. The property was money belonging To bank in control of bank Tellers. Defendant was prosecuted under State robbery statute.

2) Identify each court to which you have previously presented this ground, and if you have not previously presented it to any court write "NONE"

Superior Court Rule 35 post-Conviction Relief, Supreme Court

D.  Ground four: Convictions violate equal protection law.

1) Supporting FACTS (tell your story briefly without citing cases or law):

Attorney General's office discriminated against Robert Meades who is black and sought lesser charges for defendant's Craig and Johnson who is white. Both defendants were convicted after robbery of bank where '3' Three bank Tellers were physically at their Teller stations after being Force To move during.

-9-

2) Identify each court to which you have previously presented this ground, and if you have not previously presented it to any court write "NONE" _____

_____

_____

_____

_____

_____

_____

13. If any of the grounds listed in 12A, B,C and D were not previously presented in any other court, state or federal, state **briefly** what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?  Yes (X)  No ( )

15. Give the name and address, if known, of each attorney who represented you in the following states of the judgment attacked herein:

(a) At preliminary hearing _____

_____

(b) At arraignment and plea _____

_____

(c) At trial *Thomas Little* _____

(d) At sentencing *Thomas Little* _____

_____

-10-

(e)  On appeal _____

_____

(f)  In any post-conviction proceeding _____

_____

(g)  On appeal from any adverse ruling in a post-conviction proceeding:

_____

_____

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ( ) No (X

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes (X) No ( )

(a)  If so, give name and location of court which imposed sentence to be served in the future: Superior Court, Wilmington Delaware May 8, 1984 sentence 'to' Ten years ⊣

(b)  And give date and length of sentence to be served in the future:

_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
     Yes ( )  No (X)

          Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

     " I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)

                         May 2.1988
          (Signature)"

          Robert L. Ryoder

[Henceforth, the forms provided to prisoners may be accepted with or without notarization so long as the above form of declaration is substantially complied with.]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT R. MEADES,                )
                                 )
        Petitioner               )
                                 )
    v.                           )        Civ. Act. No. 88-233 JLL
                                 )
HOWARD YOUNG, Warden, Multi-     )
Purpose Criminal Justice         )
Facility, and CHARLES M.         )
OBERLY, III, Attorney General    )
of the State of Delaware,        )
                                 )
        Respondents              )

## ANSWER

### I.  Introduction

Following a jury trial in the Superior Court, petitioner Robert R. Meades was convicted of three counts of first degree robbery and one count of second degree conspiracy. Meades was later sentenced to 32 years imprisonment, 10 years, the first 3 years of which were mandatory, for each count of robbery and 2 years for conspiracy. On direct appeal to the Delaware Supreme Court, the convictions were affirmed under Rule 26(c). Meades v. State, No. 365, 1982 (Del. May 31, 1983). In 1987, Meades applied for state post-conviction relief, but the Superior Court summarily denied the motion, a decision affirmed on appeal. Meades v. State, No. 334, 1987 (Del. Apr. 22, 1988).

## II.  Exhaustion

In his petition for federal habeas relief, Meades advances three claims for relief:  1) the pre-trial identification of him by several witnesses was impermissibly suggestive and unreliable; 2) the double jeopardy clause barred his conviction for three searpate robberies since he took money only from one bank; and 3) the prosecutorial decision to charge him with three counts of first degree robbery was motivated by Meades' race, violating the equal protection clause.  Meades' challenge to the identification procedures was presented to the state courts on direct appeal, and his complaints about the multiple charges and the charging decision were presented to the state courts in post-conviction proceedings.  Meades has therefore exhausted state remedies.  See Smith v. Digmon, 434 U.S. 332 (1978).

## III.  Legal Claims

### A.  Pre-Trial Identification

1.  On March 25, 1982, a branch of the Wilmington Savings Fund Society, located at the Penn-Mart Shopping Center in New Castle, Delaware, was robbed by a black male carrying a pistol. During the robbery, several tellers were approached by the robber and directed to put cash into a bag.  Each teller did so, and the robber then fled.  On April 22, about four weeks after the robbery, Delaware State Police showed a photo array to Gwendolyn Washington, Margaret Gocella, Dinah Mikulcik, and John Mashishin.  The array consisted of nine black and white

photos of black males, mounted on a large piece of cardboard.
The photos displayed the face and upper chest of each subject
in both frontal and profile views. The subjects were similar
in appearance, having the same hair style and being in the same
range of age, weight, and height. Each of the witnesses viewed
the array individually. The officer who displayed the array
did not suggest which photo to select, and he told the witnesses
only to determine if they could identify anyone in the photos
as being the robber. Based on their various opportunities to
view the robber, each witness selected a photo of Meades as
that of the robber. Tr. 8-17, 21-28, 32-36, 44-54, 61-70,
86-90 (contained in Brief for Appellant, Meades v. State, No.
365, 1982 (Del. May 31, 1983)).

2.    Prior to trial, Meades moved to suppress the pre-trial
identifications. After hearing Washington's testimony about
her identification of Meades, defense counsel apparently
withdrew the motion. Tr. 18-19. At trial, all four eyewit-
nesses testified that they had identified Meades' photo in the
array, and they also identified Meades in court as the robber.
Tr. 34-36, 53-54, 69-70, 86-90. Meades now challenges the
introduction into evidence of the identification evidence.
However, he offers no reason to conclude that the identification
procedure was impermissibly suggestive, and indeed, there is no
evidence to that effect. United States v. Holiday, 457 F.2d
912, 914-15 (3d Cir. 1972). Since the constitutional claim
being advanced by Meades depends on the existence of impermissible
suggestive identification procedures, Neil v. Biggers, 409 U.S.

188, 198-99 (1972), his failure to show that the photo array was impermissibly suggestive means that he is not entitled to relief.

3.    Undeterred by this defect in his case, he apparently challenges the reliability of the identifications, see generally Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Biggers, supra, pointing to three factors.  First, he claims that the identifications were based on a set of photos other than those introduced at trial.  The only photos admitted at trial, however, were five pictures taken by the bank security cameras.  Those photos were introduced by the prosecution, not for purposes of identifying Meades, but to show the layout of the bank and location of the various tellers.  Tr. 29-32, 46-47, 65-66.  As a result, those photos are totally irrelevant to the witnesses' pre-trial identifications.

4.    Next, Meades alleges that his identification by Gocella and Mikulchik was invalid since they testified that they only saw the robber when he was wearing a mask.  Tr. 45, 62.  Considering the factors set out in Biggers, 409 U.S. at 199, and Manson, 432 U.S. at 114-16, to determine the reliability of a pre-trial identification, those by Gocella and Mikulchik are clearly reliable.  First, there was adequate opportunity to view.  The bank was well-lit by the interior lighting and by natural light, the day of the robbery being sunny.  Tr. 10, 22. Gocella was able to view the robber as he accosted Virginia Murray, the teller next to her, walked to the door to allow the

mailman into the bank, and then leaned over her counter to
demand cash. Tr. 45, 47-48. As the robber ordered her to put
money into the bag, he was less than a foot from her. Tr. 48.
Mikulchik also testified that she saw the robber at Murray's
station, move to Gocella's window, let the mailman into the
building, and then approach her. Tr. 62-64. The robber came
within a yard of her and asked her if she had tripped the
alarm, and she watched him for a total of 3 to 5 minutes. Tr.
66. Gocella and Mikulchik also paid close attention to the
robber, as evidenced by their physical description of him and
their accounts of his actions in the bank.

5.    Both of the women also described the robber. According
to Gocella, the robber was a black male, between 5'5" and
5'10", with a medium build. He was wearing a stocking mask,
dark trousers, blue jacket, a knitted cap, and gloves. Tr. 45.
Mikulchik described him as being about 5'7" with a stocky
build; the man was wearing black and white sneakers, a blue
satin jacket, gloves, and a cap. Tr. 63. Those descriptions,
in turn, were consistent with those given by Washington and
Mashishin. Tr. 22, 78. There is no claim that Meades' physical
characteristics are substantially different from those described
by Gocella and Mikulchik.

6.    There is also no dispute about the certainty of the
identifications. Gocella testified that there was no doubt in
her mind since she "was able to view the individual as he
walked to the door to let the mailman in...[and] when his face

was close to [hers]." Tr. 54. Mikulchik also testified that there no question in her mind about her identification of Meades as the robber. Tr. 70. Finally, though the identifications were made about four weeks after the robbery, there is no indication that the lapse of time had affected the ability of Gocella and Mikulchik to identify the robber. Against this backdrop, their identifications of Meades was constitutionally reliable.

7.    The final reason articulated by Meades to declare his identification invalid is that he was seen by Washington outside the courtroom, in the custody of correctional officers, before the hearing to suppress the pre-trial identification. That exposure, however, would have had no effect on Washington's selection of Meades' photo five months earlier. See Coleman v. Alabama, 399 U.S. 1, 5-6 (1960) (plurality opinion). Thus, this allegation is immaterial to the challenge to the pre-trial identification.

8.    Because the identification procedures were not impermissibly suggestive and the resulting identifications were reliable, Meades has stated no claim for relief.

B.    Charging Decision

1.    Since Meades demanded money from three different bank tellers, he was charged with three counts of robbery. Meades now challenges on two grounds the prosecutorial decision which led to his indictment on three robbery charges. First, he claims that since the money taken from each teller was the

property of the bank, he should only have been charged with one count of robbery since there was only one victim. He also alleges that because of his race (black), he was charged with three counts of robbery, in contrast to the charging decision in a different bank robbery in which the defendants, who were white, were charged with only one count of robbery.

2.  Meades did not raise these issues at trial or on direct appeal, and he was therefore required to show both cause and actual prejudice in order to excuse his procedural defaults and obtain consideration of the merits of his claim. Conyers v. State, 422 A.2d 345 (Del. 1980). Though the Delaware Supreme Court reached the merits of Meades' post-conviction claim, the court, as an alternative basis for its decision, also affirmed the denial of post-conviction relief because of Meades' procedural default. Meades v. State, No. 334, 1987, slip op. at 2-3 (Del. Apr. 22, 1988). As a result, federal habeas review is precluded unless Meades shows both cause for the defaults at trial and on direct appeal and actual prejudice stemming from the alleged violations. Wainwright v. Sykes, 433 U.S. 72 (1977); United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982). As in the state courts, however, Meades has articulated no basis to excuse the defaults, and his complaints about the charging decision should therefore be rejected.

3.  The decision of the court of appeals in Reynolds v. Ellingsworth, 843 F.2d 712 (3d Cir. 1988), pet. for cert.

filed, 57 U.S.L.W. ___ (U.S. Aug. 22, 1988) (No. 88-395), does
not compel a different result regarding the deference to be
given to the state supreme court's holding that Meades proce-
durally defaulted.  Determining that the Delaware procedural
default rule was not "adequate" under Sykes to bar federal
habeas review of the claim presented in Reynolds, the court of
appeals decided that the rule was both novel and sporadically
applied.  843 F.2d at 719-22.  That conclusion is wrong since
it rests on a fundamentally erroneous reading of state law.

    4.    Contrary to the observations of the Reynolds court,
the decision in Conyers was no more than a state articulation
of federal procedure which, given long-standing reliance by
Delaware courts upon federal criminal practice, including
federal post-conviction procedure, Delaware litigants could
expect to have applied to their cases.  At the time of Meades'
trial in 1982, the Delaware post-conviction remedy was found in
Criminal Rule 35(a).  That rule, modeled on 28 U.S.C. sec.
2255, had been adopted in 1953 when the state courts chose to
pattern the criminal procedure rules after those used by the
federal courts.  Curran v. Wooley, 101 A.2d 303, 305-07 (Del.
Super. 1953), aff'd, 104 A.2d 771 (Del. 1954); Herrmann, "The
New Rules of Procedure in Delaware," 18 F.R.D. 327, 331-33
(1956); Del. Super. Ct. Crim. R., revisor's notes.  The state
courts fully expected to rely on federal procedural law when
interpreting the state rules, Herrmann, 18 F.R.D. at 344, 346,
and they have traditionally paralleled the course set by

federal procedure. For example, in 1955, the Superior Court, relying on federal decisions interpreting section 2255, observed that to warrant relief under Rule 35(a), "there must be a showing that a retrial could reasonably be expected to result in a different verdict and judgment." State v. Curran, 116 A.2d 782, 786-87 (Del. Super. 1955) (Carey, J. concurring), aff'd, 122 A.2d 126 (Del.), cert. denied, 352 U.S. 913 (1956) (citing United States v. Bowen, 94 F.Supp. 1006, 1009 (N.D. Ga.), aff'd, 192 F.2d 515 (5th Cir. 1951); United States v. Moore, 166 F.2d 102, 104 (7th Cir. 1948)). Indeed, the decision in Curran is entirely consistent with a procedural default rule, given the nature of the claim in that case, despite the contrary reading of Curran by the Reynolds court. The prosecution had allegedly used perjured testimony, and the use of such evidence, as well as concealing the fact of its use, certainly falls within the definition of "cause" to explain the failure to raise the claim at trial or on direct appeal. Murray v. Carrier, 477 U.S. 478, 488 (1986) (quoting Brown v. Allen, 344 U.S. 443, 486 (1953)); Freeman v. Georgia, 599 F.2d 65, 71-72 (5th Cir. 1979).

5. After the decision in Fay v. Noia, 372 U.S. 391 (1963), the state courts had, without citing Noia, generally followed its rationale. If counsel had made a tactical choice not to object at trial or present the issue on appeal, the claim was deemed waived. King v. State, 239 A.2d 707, 708 (Del. 1968); State v. Herhal, 307 A.2d 553, 555 (Del. Super.

1973). Though the <u>Reynolds</u> court concluded that <u>King</u> and <u>Herhal</u> could not represent a procedural default rule because the state court had also decided the merits of the particular claims, that result is inconsistent with Third Circuit precedent. <u>United States ex rel. Caruso</u>, 689 F.2d at 440. Accord <u>Harris</u> <u>v. Reed</u>, 822 F.2d 684, 686-87 (7th Cir. 1987), <u>cert. granted</u>, 108 S.Ct. 1107 (1988) (No. 87-5677). Conversely, where it was unclear that the bypass had been deliberate, review was available. <u>Rocker v. State</u>, 240 A.2d 141, 143 (Del. 1968) (citing <u>Henry v. Mississippi</u>, 379 U.S. 443 (1964)); <u>Priest v. State</u>, 227 A.2d 576, 578 (Del. 1967).

6. Following <u>Sykes</u>, the state courts again looked at the availability of state post-conviction relief. <u>Conyers v. State</u>, 422 A.2d 345 (Del. 1980), <u>aff'g</u>, 413 A.2d 1264 (Del. Super. 1979). Consistent with Delaware practice, the Superior Court referred to the analogous federal procedure. 413 A.2d at 1265 ("We may therefore look to federal decisions as to when failure to comply with a contemporaneous objection rule will bar collateral attack..."). In resolving that issue, the court noted that in <u>Sykes</u>; <u>Francis v. Henderson</u>, 425 U.S. 536 (1976); and <u>Davis v. United States</u>, 411 U.S. 233 (1973), the Supreme Court had crafted the cause and actual prejudice analysis to determine whether a defendant's procedural default would bar federal collateral review. Based on the federal standard, the Superior Court concluded "that the federal courts [would] apply the 'cause and prejudice' test to a claim of unreasonable

search and seizure as well as to other claims of federal
constitutional violation." 413 A.2d at 1266. Notably, the
court viewed the "prejudice" requirement to be consistent with
its statement in Curran in 1955 that the defendant show that
there was a reasonable likelihood of a different reason on
retrial. 413 A.2d at 1267. Similarly reviewing the federal
precedents, the state supreme court approved the Superior
Court's adherence to the Sykes standard, reasoning that that
test struck the appropriate balance between the State's interest
in an orderly process and the avoidance of a miscarriage of
justice. 422 A.2d at 346.

        7.    Against this background of state reliance on federal
decisions interpreting federal procedural requirements, the
holding in Reynolds that Conyers was novel is incorrect. Since
the 1960s, Delaware decisional law had shown that there was a
procedural penalty for raising complaints in post-conviction
proceedings that had not been made at trial or on direct
appeal. This case authority and the long-standing connection
between state and federal procedure were sufficient to apprise
a criminal defendant that he would be expected to shoulder a
procedural burden similar to that imposed on the prisoners in
Davis, Francis, and Sykes. Indeed, the state courts' decision
in Conyers was no less foreseeable than the decisions in Sykes
and United States v. Frady, 456 U.S. 152 (1982); under the
decision in Reynolds, Sykes and Frady were incorrectly decided.
Given the foreseeability of Conyers, there is no bar under the

due process clause or an "adequacy" analysis to this court's deference in habeas actions to the Delaware courts' declaration of a procedural default.  See <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 354 (1964) (citing cases).

     8.    There is also no basis to conclude that the state procedural default rule is sporadically applied, thus making the rule inadequate to bar federal habeas review.  Since the 1980 decision in <u>Conyers</u>, the rule has been consistently applied in over twenty cases.  <u>Evans v. State</u>, No. 294, 1988 (Del. Sept. 7, 1988) (speedy trial); <u>Wilkins v. State</u>, No. 82, 1988 (Del. May 11, 1988) (sentencing error); <u>Younger v. State</u>, No. 410, 1987 (Del. Feb. 23, 1988) (<u>Brady</u> claim); <u>Hanson v. State</u>, No. 182, 1987 (Del. Nov. 20, 1987) (variance in information filed in <u>de novo</u> appeal); <u>Evans v. Redman</u>, No. 4, 1987 (Del. Apr. 28, 1987) (indictment); <u>Fields v. State</u>, No. 35, 1986 (Del. Apr. 16, 1987) (assistance of counsel; jury composition); <u>Evans v. State</u>, No. 266, 1986 (Del. Apr. 6, 1987) (vagueness of statute; equal protection; <u>Brady</u> claim; presence of defendant); <u>Kelly v. State</u>, No. 287, 1986 (Del. Jan. 23, 1987) (habitual offender proceedings); <u>Cephas v. State</u>, No. 251, 1986 (Del. Dec. 19, 1986) (claims not stated in decision); <u>Folks v. State</u>, No. 66, 1986 (Del. Sept. 24, 1986) (illegal search and seizure); <u>Shadeed v. State</u>, No. 65, 1986 (Del. Sept. 11, 1986) (<u>Miranda</u> claim; illegal search and seizure); <u>Carr v. State</u>, No. 202, 1986 (Del. Sept. 8, 1986) (sufficiency of evidence); <u>Robinson v. State</u>, No. 7, 1986 (Del. May 8, 1986) (claims not stated in

decision); <u>Evans v. State</u>, No. 370, 1985 (Del. May 7, 1986) (instructions; variance; sufficiency of evidence; closing argument); <u>Brookins v. State</u>, No. 386, 1985 (Del. May 1, 1986) (closing argument); <u>Bruton v. State</u>, No. 208, 1985 (Del. Jan. 8, 1986) (claims not stated in decision); <u>Johnson v. State</u>, No. 288, 1982 (Del. Apr. 2, 1985) (claim under <u>Geders v. United States</u>, 425 U.S. 80 (1976)); <u>Payne v. State</u>, No. 350, 1981 (Del. Apr. 2, 1985) (double jeopardy; sufficiency of evidence) (<u>Conyers</u> held retroactive); <u>Saunders v. State</u>, No. 268, 1983 (Del. May 28, 1984) (closing argument); <u>Ahmad v. State</u>, No. 240, 1983 (Del. Feb. 21, 1984) (claims not described in decision); <u>Oney v. State</u>, 482 A.2d 745 (Del. 1984) (<u>Miranda</u>; voluntariness of confession); <u>Johnson v. State</u>, 460 A.2d 539 (Del. 1983) (voluntariness of confession).  The <u>Reynolds</u> court premised its conclusion of inconsistency before <u>Conyers</u> on a handful of post-conviction cases and the failure of the state courts in <u>Bailey v. State</u>, 422 A.2d 956 (Del. 1980), to address the question of default.  843 F.2d at 722.  That reliance is misplaced.  First, measuring consistency by the number of cases is hardly fair to Delaware given the small size of the state and the correspondingly low caseload of the state supreme court.  As the Annual Reports of the Delaware Judiciary repeatedly show, the caseload of the state supreme court has only reached 400 cases a year in the very recent past.  Only 30 to 35 percent of those cases are criminal appeals, and relatively few of those appeals involve post-conviction litigation, a phenomenon

paralleled by this court's section 2254 caseload. A conclusion
of inconsistency also overlooks the reality of post-conviction
litigation: many cases involving claims defaulted at trial or
appeal are presented in the guise of challenges to counsel's
effectiveness. See Carrier, 477 U.S. at 488, 496. Finally,
Bailey hardly supports a conclusion of inconsistency since
Bailey predates Conyers by several weeks.

    9.    Even if Reynolds cannot be reexamined in this case,
it is nonetheless inapplicable to Meades. Because Meades'
claims go directly to the institution of the prosecution, he
was required by Criminal Rule 12(b)(2) to raise them prior to
trial on pain of forfeiture. In addition, the state courts
have regularly enforced the terms of Rule 12(b)(2). Hanson v.
State, No. 182, 1987 (Del. Nov. 20, 1987); Evans v. Redman, No.
4, 1987 (Del. Apr. 28, 1987); Pauls v. State, 476 A.2d 157, 159
(Del. 1984); Mayo v. State, 458 A.2d 26, 27 (Del. 1983);
Rossitto v. State, 287 A.2d 669, 670 (Del. 1972); Dunn v. Mayor
and Council of City of Wilmington, 212 A.2d 596, 601 (Del.
Super. 1965), aff'd, 219 A.2d 153 (Del. 1966); Martin v. State,
116 A.2d 685, 686 (Del. Super. 1955). Furthermore, Conyers,
decided over two years before Meades was tried, was certainly
no surprise, especially since Conyers was based on Davis v.
United States, 411 U.S. 233 (1973). Davis, in turn, had
decided that challenges to institution of the prosecution, not
raised at trial and thus forfeited under Rule 12(b)(2), could
be considered on collateral review only if the defendant had

shown cause for not making a timely objection and actual prejudice.  Given the reliance of <u>Conyers</u> on <u>Davis</u> and the general reliance on federal decisions in resolving state procedural issues, Meades certainly had notice that the <u>Davis</u> holding would be used by the state courts to reject any untimely challenge to the indictment or prosecution.  Since the procedural issues, Meades certainly had notice that the <u>Davis</u> holding would be used by the state courts to reject any untimely challenge to the indictment or prosecution.  Since the procedural rule relied upon by the Delaware courts to deny Meades' claim is neither novel nor sporadically applied, it is an adequate state ground to bar federal habeas review under <u>Sykes</u>.

10.  Even if Meades' complaints are reviewed on the merits, he is not entitled to relief.  First, the evidence is clear that he took money from three separate bank tellers, pointing a weapon at each of them.  Under state law, one commits robbery when one compels the owner or another person to deliver the property to him.  11 <u>Del. C.</u> sec. 831(a)(2), 832(a).  The state robbery statute is thus distinct from 18 U.S.C. sec. 2113, the federal bank robbery statute.  Federal law focuses on taking from the bank itself, and robbery of several individual tellers does not constitute separate takings from the bank.  <u>United States v. Canty</u>, 469 F.2d 114, 126 (D.C. Cir. 1972).  The indictment could therefore allege, and the jury could find, that Meades had robbed three distinct victims, <u>Harrigan v. State</u>, 447 A.2d 1191, 1192 (Del. 1972), a construction

of state law that is binding on this court.  <u>Mullaney v.
Wilbur</u>, 421 U.S. 684, 690-91 (1975).

    11.  Finally, Meades' claim of selective prosecution fails
for two reasons.  In order to prevail, Meades must show that
other defendants similarly situated were not charged with
multiple robbery counts and that the decision to so charge him
was based on an improper factor, e.g., race or religion.  <u>See</u>
<u>Wayte v. United States</u>, 470 U.S. 598, 608 (1985); <u>Oyler v.
Boles</u>, 368 U.S. 448, 456 (1962).  To establish the first point,
Meades points to the case of <u>Craig v. State</u>, 457 A.2d 755 (Del.
1983).  However, <u>Craig</u> is factually distinct:  "while one
robber, armed with a shotgun, stood by the door, the two others
hurdled the counter and emptied the tellers' drawers, stuffing
their contents into a bag."  457 A.2d at 757.  Meades, however,
approached three separate tellers <u>seriatim</u> and, while brandishing
a pistol, demanded that each teller fill his bag with money.
In similar cases, the defendant has been charged with the
robbery of each teller.  <u>Kelly v. State</u>, No. 23, 1984 (Del.
July 9, 1985).  Thus, Meades' claim must be rejected since he
has not identified a similarly situated defendant who was
treated differently.  Furthermore, he has not shown any dis-
criminatory motive.  His only claim of discriminatory intent is
the fact that he is black and the <u>Craig</u> defendants are white.
That alone, however, does not establish that the charging
decision in his case was made "because of" his race.  <u>Wayte</u>,
470 U.S. at 610.  <u>See</u> <u>Government of the Virgin Islands v.</u>

Harrigan, 791 F.2d 34, 36 (3d Cir. 1986).  Since Meades has not established the two elements of a selective prosecution claim, it therefore follows that the claim must be rejected.

### IV.   State Court Reocrds

Respondents submit herewith relevant records of the Delaware Supreme Court in case numbers 365, 1982 and 334, 1987.

WHEREFORE, respondents pray that the petition for a writ of habeas corpus be dismissed.

Loren C. Meyers
Deputy Attorney General
Department of Justice
State Office Building
820 N. French Street
Wilmington, DE 19801

Date:  September 28, 1988

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT R. MEADES,                  )
                                   )
            Petitioner,            )
                                   )
        v.                         )    Civil Action No. 88-233-JLL
                                   )
HOWARD YOUNG, Warden,              )
Multi-Purpose Criminal Justice     )
Facility, and CHARLES M. OBERLY,   )
III, Attorney General of the       )
State of Delaware,                 )
                                   )
            Respondents.           )

---

Robert R. Meades, petitioner, pro se.

Loren C. Meyers, Esquire, Deputy Attorney General, Department of
Justice, Wilmington, Delaware, attorney for respondents.

---

MAGISTRATE'S REPORT AND RECOMMENDATION

Date: March 14, 1989

Wilmington, Delaware

ROBINSON, U.S. Magistrate

      Petitioner Robert R. Meades has filed an application for federal habeas corpus relief pursuant to 28 U.S.C. §2254 challenging his state court conviction of three counts of first degree robbery and one count of second degree conspiracy. More specifically, petitioner asserts that this conviction is violative of the due process and equal protection clauses of the Fourteenth Amendment in that: 1) The identification procedures were impermissibly suggestive and unreliable; 2) the double jeopardy clause barred his conviction for three separate robberies since he took money from only one bank; and 3) the prosecutorial decision to charge him with three counts of first degree robbery was motivated by petitioner's race. Petitioner's challenge to the identification procedures was presented to the state courts on direct appeal wherein his conviction was affirmed. Meades v. State, No. 365, 1982 (Del. Supr. May 31, 1983). In 1987, petitioner applied for state post-conviction relief, challenging the prosecutorial decision to charge him with three counts of first degree robbery. The Superior Court of the State of Delaware summarily denied the motion, a decision affirmed on appeal. Meades v. State, No. 334, 1987 (Del. Supr. April 22, 1988). The exhaustion requirement of 28 U.S.C. §2254(b), therefore, has been satisfied. See, Smith v. Digmon, 434 U.S. 332 (1978). The Court will address petitioner's claims seriatim.

## Identification Procedures

Petitioner alleges in his application that the identification given at trial by bank teller Washington "may have been suggested" since petitioner was not identified in court from the same photographic line-up viewed by the bank tellers soon after the robbery had been committed.  Petitioner alleges that the identification "is also questionable" because the robber's face had been obscured by a mask.  (D.I. 2)  Thus, petitioner apparently argues that the witnesses' in-court identifications were "tainted" by impermissibly suggestive pretrial identification procedures.  Petitioner's contentions stem in part from the fact that the photographic array viewed by witnesses pretrial was not introduced at trial; rather, the only photographs submitted into evidence were those taken by the bank security cameras during the robbery itself, showing the robber's face obscured by a mask.[1]  The record demonstrates the fallacy of petitioner's claim, however.

Witness Gwendolyn May Washington, a senior teller at the Wilmington Savings Fund Society ("WSFS") bank branch located in the Penn Mart Shopping Center, Basin Road, New Castle, Delaware, testified at the suppression hearing and at trial that she was employed in that capacity on March 25, 1982 at approximately 2:00 p.m.  (D.I. 9A, Tr. 8, 21-2)  The bank was

---

1.  These latter photographs were not introduced for identification purposes, but for the purpose of showing the layout of the bank and the location of the various tellers. (D.I. 9A, trial transcript contained in Brief for Appellant, Meades v. State, No. 365, 1982, "Tr." 29-32, 46-7, 65-6)

3

well lit that day by the interior lighting and by natural light, the day being bright and sunny. (D.I. 9A, Tr. 10, 22) On March 25, 1982, teller Washington observed a black male, about five feet nine inches tall, between 150-160 pounds, come into the bank wearing work gloves, dark pants, a dark shirt, a cap and sneakers. (D.I. 9A, Tr. 9, 22) After going to the customer service station, the individual got into the customer line. Teller Washington saw the individual at a distance of approximately 40 feet and 20 feet, respectively, for several minutes until he approached her teller station. (D.I. 9A, Tr. 10-11, 24-5) As he approached her station, he threw a bag up on the counter and said "Put your money in the bag". At this point he was about two feet from teller Washington. (D.I. 9A, Tr. 25) He then turned his back on her, pulled a dark stocking mask over his face, and turned back to point a gun at her, repeating his demand for money. Teller Washington complied with his demand, putting approximately $1,300 into the bag, along with a dye pack. (D.I. 9A, Tr. 26)

The robber proceeded to the next teller station, that of Virginia Murray, slammed the bag on the counter, and told Ms. Murray to put money in the bag. According to witness Dinah Mikulcik,[2] the robber was about five feet seven inches tall, stocky build, wearing knitted gloves, a cap, a blue satin jacket, and black and white sneakers and still brandishing a gun. (D.I.

---

2. Ms. Mikulcik was a teller who had just closed her station when the robbery occurred.

4

9A, Tr. 62-3)  Ms. Mikulcik helped her fellow teller put money in the bag.  According to Ms. Mikulcik's trial testimony, the robber proceeded to a third teller's station and demanded money.  Prior to leaving the bank, the robber came within two or three feet of Ms. Mikulcik, pointed his gun at her, and asked if she had pulled the alarm.  As he left the bank, the robber instructed those in the bank to "Hit the floor."  (D.I. 9A, Tr. 64-6)

Margaret Gocella also testified at trial that she was employed as a teller at the WSFS Penn Mart branch on March 25, 1982.  When she first noticed the robber, he was leaning over the counter at Virginia Murray's station, pointing a gun at her.  At trial, Ms. Gocella described the robber as being a black male, between five feet five inches and five feet ten inches tall, medium build, and wearing dark trousers, blue jacket, knit cap and gloves.  The robber had a stocking mask covering his face. (D.I. 9A, Tr. 44-5)  According to Ms. Gocella, the robber approached her station, put the bag across the counter, pointed a gun at her, leaned over the counter so that he was between six to twelve inches from her, and said "Fill it up, bitch."  (D.I. 9A, Tr. 48)  Ms. Gocella, with the help of another teller, put approximately $1,600 and a dye pack in the bag.

Also testifying at trial was the owner of two businesses located in the Penn Mart Shopping Center near the bank.  Mr. Mashishin stated that, prior to the bank robbery on March 25, 1982, he noticed a black male in one of his stores, described as five feet seven inches to five feet eight inches

5

tall, athletic build, wearing brown pants, blue jacket, tennis shoes, brown cap, and a pair of gloves. The individual stayed in his store for five to ten minutes. (D.I. 9A, Tr. 78-9)  Mr. Mashishin testified that he had no doubt that he saw this individual walk past his store once or twice after leaving it. Mr. Mashishin observed the individual again around 2:00 p.m. sitting on the display window ledge of the store located next to the bank.  Mr. Mashishin walked past the individual within two to three feet and recognized him as wearing the same clothes. (D.I. 9A, Tr. 79-80)  As Mr. Mashishin returned to his store by again walking in front of the bank, he noticed the people inside the bank starting to lie down and saw an individual with a mask and a gun and dressed the same way as the individual he had seen periodically through the day. (D.I. 9A, Tr. 81-2)  Mr. Mashishin contacted the police and returned to the bank in time to see the robber leaving the bank.  The robber was dressed in a blue jacket, brown pants and sneakers; Mr. Mashishin found a brown wool cap on the sidewalk. (D.I. 9A, Tr. 83-5)

Sometime after the robbery, the witnesses were asked by the state police to review a photographic array.  On April 22, 1982, witnesses Washington, Gocella and Mashishin reviewed approximately nine black and white photographs displayed on a white billboard.  The photographs were of black males, full face and profile from the neck or chest up with similar physical characteristics.  Each of the witnesses viewed the display individually; no one suggested which photograph they should

6

select.  All three of these witnesses selected petitioner as the man who robbed the bank on March 25, 1982. (D.I. 9A, Tr. 35, 54, 89-90)  Ms. Mikulcik was asked to view a photographic array on July 28, 1982.  The display included eight or nine black and white pictures, full face and profile, of black males with similar physical characteristics.  The pictures were displayed on orange index cards laid out side by side on a table.  No one suggested which photograph to select.  This witness again selected the petitioner's photograph as being that of the individual who robbed the bank on March 25, 1982.  (D.I. 9A, Tr. 77-70)  Finally, all four witnesses made in-court identifications of the petitioner as the individual who robbed the bank.  (D.I. 9A, Tr. 35-6, 53-4, 69-70, 90)

Instantly, petitioner is challenging the witnesses' identification of him as the robber.  The record demonstrates, however, that neither the pretrial nor the in-court identification procedures were impermissibly suggestive and, in fact, the identifications were reliable.  The United States Supreme Court reviewed the issue of pretrial identifications in Manson v. Brathwaite, 432 U.S. 98 (1977), a case involving the pretrial identification of a defendant by the display of a single photograph to the police undercover agent who consummated the drug deal in question.  Although the Court acknowledged that "'the procedure in the instant case was suggestive [because only one photograph was used] and unnecessary' [because there was no

7

emergency or exigent circumstances]", nevertheless the Court concluded that

> reliability is the linchpin in determining the admissibility of identification testimony. . . The factors to be considered . . . include the opportunity of a witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Id. at 114. See also, United States v. Dunbar, 767 F.2d 72, 73-4 (3d Cir. 1985).

Even if the Court were to assume that some or all of the pretrial procedures[3] were impermissibly suggestive, the courtroom identifications of petitioner would not be excluded as a matter of law. Rather, the Supreme Court in United States v. Wade, 388 U.S. 218, 239-41 (1967) again considered various factors in determining whether an in-court identification was based upon observations of the suspect other than the "tainted confrontation"[4]:

> the prior opportunity to observe the alleged criminal act, the existence of any

---

3. Petitioner also contends that he was seen by Washington outside the courtroom, in the custody of correctional officers, before the hearing to suppress the pretrial identification.

4. In Wade, the identifying witnesses, while seated in a courtroom awaiting assembly of a lineup, saw the defendant in the custody of an FBI agent.

8

> discrepancy between any pre-lineup
> description and the defendant's actual
> description, any identification prior to
> lineup of another person, the identification
> by picture of the defendant prior to lineup,
> failure to identify the defendant on a prior
> occasion, and the lapse of time between the
> alleged act and the lineup identification.

Id. at 241.

Looking at the factors (many overlapping) outlined in Wade and Manson, it is evident that both the pretrial and courtroom identifications pass constitutional muster. Each of the witnesses had an adequate opportunity to review the robber under circumstances which focused their attention, i.e., the robbery itself. The witnesses' descriptions of the robber given to the police before the photographic identifications were consistent as to each other.[5] The witnesses testified that they were shown an array of photographs of similar looking individuals without suggestion as to which of the individuals might be a suspect. The photographic identifications were for the most part made within weeks of the robbery. Finally, the witnesses were certain of both the pretrial and courtroom identifications.

Because the identification procedures were not impermissibly suggestive and the resulting identifications were reliable, petitioner has stated no claim for relief in this regard.

---

5. There is no claim that petitioner's physical characteristics are substantially different from those given by the witnesses.

9

<u>Charging Decision</u>

Since petitioner demanded money from three different bank tellers, he was charged with three counts of robbery. Petitioner now challenges on two grounds the prosecutorial decision which led to his indictment on three robbery charges. First, he claims that since the money taken from each teller was the property of just one bank, he should only have been charged with one count of robbery since there was only one victim. (D.I. 2) He also alleges that because of his race (black), he was charged with three counts of robbery, in contrast to the charging decision in a different bank robbery in which the defendants, who were white, were charged with only one count of robbery. (D.I. 2, 12)

Petitioner did not raise these issues at trial or on direct appeal. These issues were raised for the first time as post-conviction claims. Although the Delaware Supreme Court noted petitioner's procedural default in it opinion, it nevertheless proceeded to address the merits of these claims, as had the Superior Court. <u>Meades v. State</u>, No. 334, 1987 (Del. Supr. April 22, 1988) (D.I. 9A, slip op. at 2).

Respondents now argue that federal habeas review is precluded unless petitioner shows both cause for the defaults at trial and on direct appeal and actual prejudice stemming from the alleged violations. <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>United States ex. rel. Caruso v. Zelinsky</u>, 689 F.2d 435, 440 (3d Cir. 1982). A discussion of whether this Court is precluded from

reviewing petitioner's claims must begin with the decision of the Third Circuit Court of Appeals in Reynolds v. Ellingsworth, 843 F.2d 712 (3d Cir.), cert. denied, 109 S.Ct. 403 (1988).    In Reynolds, this Court determined that a procedural default in the state courts barred review of the merits of two claims raised in a petition for writ of habeas corpus challenging a state conviction.    Petitioner Reynolds had asserted that the prosecutor's extensive references in his opening statement to two confessions that were never introduced into evidence, and the failure of the trial court to give a curative instruction, denied him due process.    The Third Circuit rejected this Court's conclusion and held instead that there existed no "independent and adequate state procedural ground" that, as a matter of federal law, barred the district court from reaching the merits of the due process claim.    More specifically, the Third Circuit found that the holding in Conyers v. State, 422 A.2d 345 (Del. Supr. 1980) did not of itself impose upon Delaware Superior Court Criminal Rule 35 (generally providing for post-conviction proceedings) a requirement that all issues should be raised at the first possible opportunity unless the petitioner demonstrates reasons to rebut or excuse the presumptive wavier.    The Third Circuit limited Conyers to its procedural context, that is, Criminal Rule 41(e) of the Delaware Superior Court, which governs the time for making suppression motions.

Respondents argue first that the Reynolds decision "rests on a fundamentally erroneous reading of state law."    (D.I.

11

9, ¶B3)    I decline, however, to reexamine the Third Circuit's analysis under these circumstances.

Accepting Reynolds as the law of the case, respondents argue that it nonetheless can be factually distinguished from the case at bar.    Unlike the situation in Reynolds, where the Third Circuit was unable to find a specific rule which precluded further review, respondents contend that Delaware Superior Court Criminal Rule 12(b)(2) required petitioner Meades to raise his claims prior to trial on pain of forfeiture.    And, indeed, Criminal Rule 12(b)(2) provides in pertinent part that

> [d]efenses and objections based on defects in the institution of the prosecution . . . may be raised only by motion before trial.    The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the Court for cause shown may grant relief from the waiver.

Instantly, by challenging the prosecutorial decision to charge him with three counts of robbery instead of one, petitioner Meades is challenging the "institution of prosecution" and, under Criminal Rule 12(b)(2), arguably has forfeited his right to further review of such issues absent a showing of cause and prejudice.    See, e.g., Pauls v. State, 476 A.2d 157, 159 (Del. Supr. 1984); Rossitto v. State, 287 A.2d 669, 670 (Del. Supr. 1972); Dunn v. Mayor and Council of City of Wilmington, 212 A.2d 596, 601 (Del. Super. 1965), aff'd, 219 A.2d

153 (Del. Supr. 1966); <u>Martin v. State</u>, 116 A.2d 685, 686 (Del. Super. 1955).

Despite this conclusion, however, I feel compelled to review the merits of petitioner's claims since the Delaware Supreme Court reached the merits of such.[6]  <u>See</u>, <u>Wainwright v. Sykes</u>, 433 U.S. at 85-86; <u>Neely v. Zimmerman</u>, 858 F.2d 144, 148 (3d Cir. 1988).  Petitioner's first contention is that the double jeopardy clause barred his conviction for three separate robberies since he took money from only one victim, the bank.  In the first instance, the applicable criminal statute, 11 Del. C. §831(a)(2), provides that

> [a] person is guilty of robbery . . . when, in the course of committing theft, he uses or threatens the immediate use of force upon another person with intent to . . . [c]ompel the owner of the property <u>or</u> <u>another</u> <u>person</u> to deliver up the property. . . .

(Emphasis added)  The statute on its face contemplates that the object of the taking is not limited to the owner of the property. Thus, in the course of a single incident, there can be more than one "victim" leading to more than one charge of robbery.  This interpretation of the statute is recognized by the State's

---

6.  In fact, that court acknowledged the procedural default issue in just one sentence inserted in the midst of its discussion on the merits.  The Delaware Superior Court reached the merits with no discussion of the presumptive waiver under Criminal Rule 12(b)(2).  (D.I. 9A, <u>State v. Meades</u>, Crim. Action Nos. IN82-05-1626; 1627; 1646; 1647 (September 11, 1987))

13

highest court[7] and, therefore, is binding on this Court. <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 690-91 (1975).

Finally, petitioner's claim of selective prosecution fails for two reasons. In order to prevail, petitioner must show that other defendants similarly situated were not charged with multiple robbery counts and that the decision to so charge him was based on an improper factor, e.g., race or religion. <u>See</u>, <u>Wayte v. United States</u>, 470 U.S. 598, 608 (1985); <u>Oyler v. Boles</u>, 368 U.S. 448, 456 (1962). To establish the first point, petitioner refers to the case of <u>Craig v. State</u>, 457 A.2d 755 (Del. Supr. 1983). However, <u>Craig</u> is factually distinct. In <u>Craig</u>, "while one robber, armed with a shotgun, stood by the door, the two others hurdled the counter and emptied the tellers' drawers, stuffing their contents into a bag." 457 A.2d at 757. Instantly, petitioner approached three separate tellers <u>seriatim</u> and, while brandishing a pistol, demanded that each teller fill his bag with money. In similar cases, the defendant has been charged with the robbery of each teller. <u>See</u>, <u>Kelly v. State</u>, No. 23, 1984 (Del. Supr. July 9, 1985) (copy attached hereto). Thus, petitioner's claim must be rejected since he has not identified a similarly situated defendant who was treated differently.

Furthermore, petitioner has not shown any discriminatory motive. His only claim of discriminatory intent

---

7. <u>See</u>, <u>Harrigan v. State</u>, 447 A.2d 1191, 1192 (Del. Supr. 1982); <u>Kile v. State</u>, 382 A.2d 243, 245 (Del. Supr. 1978); <u>McCoy v. State</u>, 361 A.2d 241, 242-43 (Del. Supr. 1976).

14

is the fact that he is black and the defendants in <u>Craig</u> were white. That alone, however, does not establish that the charging decision in his case was made "because of" his race. <u>Wayte</u>, 470 U.S. at 610. <u>See</u>, <u>Government of the Virgin Islands v. Harrigan</u>, 791 F.2d 34, 36 (3d Cir. 1986). Since petitioner has not established the two elements of a selective prosecution claim, it follows that the claim must be rejected.

For the foregoing reasons, I recommend that petitioner's application for habeas corpus relief be dismissed and the writ be denied.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT R. MEADES, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 88-233-JLL |
| | ) | |
| HOWARD YOUNG, Warden, | ) | |
| Multi-Purpose Criminal Justice | ) | |
| Facility, and CHARLES M. OBERLY, | ) | |
| III, Attorney General of the | ) | |
| State of Delaware, | ) | |
| | ) | |
| Respondents. | ) | |

## FINAL ORDER

The Court having (1) reviewed the U.S. Magistrate's Report and Recommendation which recommends that this habeas corpus action of a state prisoner be dismissed (Docket Item ["D.I."] 13), and (2) noted that no objection has been timely fled, it is

ORDERED:

1.    The Magistrate's Report, dated March 14, 1989 (D.I. 13), is hereby accepted and adopted by this Court.

2.    The petition for a writ of habeas corpus is hereby dismissed and the writ is hereby denied.

3.    No probable cause exists for an appeal.

4.    The Clerk shall mail a copy of this order to the plaintiff and to Loren C. Meyers, Deputy Attorney General, Delaware Department of Justice.

Dated:  April 5, 1989.

United States District Judge

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

C.A. No. <u>89-3280</u>

ROBERT R. MEADES

    vs.

HOWARD YOUNG, WARDEN, ET AL.

    (D.Del. Civ. No. 88-00233)

**Present:** BECKER, GREENBERG and SEITZ, <u>CIRCUIT JUDGES</u>

    Submitted is appellant's request for a certificate of probable cause pursuant to Rule 22(b), <u>Federal Rules of Appellate Procedure</u>

in the above-captioned case.

    Respectfully,

    *Sally Mivos (PAR)*

    'Clerk'

SM/PAR/jm

---

The foregoing *Application for a certificate of probable Cause is Denied.*

By the Court,

_____
Circuit Judge

Dated: **JUN 16 1989**
ND/cc: RRM
    LCM ✓

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT R. MEADES,                    )
                                     )
            Petitioner,              )
                                     )
       v.                            )    Civil Action No. 88-233-JLL
                                     )
HOWARD YOUNG, Warden,                )
Multi-Purpose Criminal Justice       )
Facility, and CHARLES M. OBERLY,     )
III, Attorney General of the         )
State of Delaware,                   )
                                     )
            Respondents.             )

---

Robert R. Meades, petitioner, pro se.

Loren C. Meyers, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, attorney for respondents.

---

MAGISTRATE'S REPORT AND RECOMMENDATION

Date: March 14, 1989

Wilmington, Delaware

ROBINSON, U.S. Magistrate

Petitioner Robert R. Meades has filed an application for federal habeas corpus relief pursuant to 28 U.S.C. §2254 challenging his state court conviction of three counts of first degree robbery and one count of second degree conspiracy. More specifically, petitioner asserts that this conviction is violative of the due process and equal protection clauses of the Fourteenth Amendment in that: 1) The identification procedures were impermissibly suggestive and unreliable; 2) the double jeopardy clause barred his conviction for three separate robberies since he took money from only one bank; and 3) the prosecutorial decision to charge him with three counts of first degree robbery was motivated by petitioner's race. Petitioner's challenge to the identification procedures was presented to the state courts on direct appeal wherein his conviction was affirmed. <u>Meades v. State</u>, No. 365, 1982 (Del. Supr. May 31, 1983). In 1987, petitioner applied for state post-conviction relief, challenging the prosecutorial decision to charge him with three counts of first degree robbery. The Superior Court of the State of Delaware summarily denied the motion, a decision affirmed on appeal. <u>Meades v. State</u>, No. 334, 1987 (Del. Supr. April 22, 1988). The exhaustion requirement of 28 U.S.C. §2254(b), therefore, has been satisfied. <u>See</u>, <u>Smith v. Digmon</u>, 434 U.S. 332 (1978). The Court will address petitioner's claims seriatim.

2

## Identification Procedures

Petitioner alleges in his application that the identification given at trial by bank teller Washington "may have been suggested" since petitioner was not identified in court from the same photographic line-up viewed by the bank tellers soon after the robbery had been committed. Petitioner alleges that the identification "is also questionable" because the robber's face had been obscured by a mask. (D.I. 2) Thus, petitioner apparently argues that the witnesses' in-court identifications were "tainted" by impermissibly suggestive pretrial identification procedures. Petitioner's contentions stem in part from the fact that the photographic array viewed by witnesses pretrial was not introduced at trial; rather, the only photographs submitted into evidence were those taken by the bank security cameras during the robbery itself, showing the robber's face obscured by a mask.[1] The record demonstrates the fallacy of petitioner's claim, however.

Witness Gwendolyn May Washington, a senior teller at the Wilmington Savings Fund Society ("WSFS") bank branch located in the Penn Mart Shopping Center, Basin Road, New Castle, Delaware, testified at the suppression hearing and at trial that she was employed in that capacity on March 25, 1982 at approximately 2:00 p.m. (D.I. 9A, Tr. 8, 21-2) The bank was

---

1. These latter photographs were not introduced for identification purposes, but for the purpose of showing the layout of the bank and the location of the various tellers. (D.I. 9A, trial transcript contained in Brief for Appellant, Meades v. State, No. 365, 1982, "Tr." 29-32, 46-7, 65-6)

3

well lit that day by the interior lighting and by natural light, the day being bright and sunny. (D.I. 9A, Tr. 10, 22) On March 25, 1982, teller Washington observed a black male, about five feet nine inches tall, between 150-160 pounds, come into the bank wearing work gloves, dark pants, a dark shirt, a cap and sneakers. (D.I. 9A, Tr. 9, 22) After going to the customer service station, the individual got into the customer line. Teller Washington saw the individual at a distance of approximately 40 feet and 20 feet, respectively, for several minutes until he approached her teller station. (D.I. 9A, Tr. 10-11, 24-5) As he approached her station, he threw a bag up on the counter and said "Put your money in the bag". At this point he was about two feet from teller Washington. (D.I. 9A, Tr. 25) He then turned his back on her, pulled a dark stocking mask over his face, and turned back to point a gun at her, repeating his demand for money. Teller Washington complied with his demand, putting approximately $1,300 into the bag, along with a dye pack. (D.I. 9A, Tr. 26)

The robber proceeded to the next teller station, that of Virginia Murray, slammed the bag on the counter, and told Ms. Murray to put money in the bag. According to witness Dinah Mikulcik,[2] the robber was about five feet seven inches tall, stocky build, wearing knitted gloves, a cap, a blue satin jacket, and black and white sneakers and still brandishing a gun. (D.I.

---

2.  Ms. Mikulcik was a teller who had just closed her station when the robbery occurred.

4

9A, Tr. 62-3) Ms. Mikulcik helped her fellow teller put money in the bag. According to Ms. Mikulcik's trial testimony, the robber proceeded to a third teller's station and demanded money. Prior to leaving the bank, the robber came within two or three feet of Ms. Mikulcik, pointed his gun at her, and asked if she had pulled the alarm. As he left the bank, the robber instructed those in the bank to "Hit the floor." (D.I. 9A, Tr. 64-6)

Margaret Gocella also testified at trial that she was employed as a teller at the WSFS Penn Mart branch on March 25, 1982. When she first noticed the robber, he was leaning over the counter at Virginia Murray's station, pointing a gun at her. At trial, Ms. Gocella described the robber as being a black male, between five feet five inches and five feet ten inches tall, medium build, and wearing dark trousers, blue jacket, knit cap and gloves. The robber had a stocking mask covering his face. (D.I. 9A, Tr. 44-5) According to Ms. Gocella, the robber approached her station, put the bag across the counter, pointed a gun at her, leaned over the counter so that he was between six to twelve inches from her, and said "Fill it up, bitch." (D.I. 9A, Tr. 48) Ms. Gocella, with the help of another teller, put approximately $1,600 and a dye pack in the bag.

Also testifying at trial was the owner of two businesses located in the Penn Mart Shopping Center near the bank. Mr. Mashishin stated that, prior to the bank robbery on March 25, 1982, he noticed a black male in one of his stores, described as five feet seven inches to five feet eight inches

5

tall, athletic build, wearing brown pants, blue jacket, tennis shoes, brown cap, and a pair of gloves. The individual stayed in his store for five to ten minutes. (D.I. 9A, Tr. 78-9) Mr. Mashishin testified that he had no doubt that he saw this individual walk past his store once or twice after leaving it. Mr. Mashishin observed the individual again around 2:00 p.m. sitting on the display window ledge of the store located next to the bank. Mr. Mashishin walked past the individual within two to three feet and recognized him as wearing the same clothes. (D.I. 9A, Tr. 79-80) As Mr. Mashishin returned to his store by again walking in front of the bank, he noticed the people inside the bank starting to lie down and saw an individual with a mask and a gun and dressed the same way as the individual he had seen periodically through the day. (D.I. 9A, Tr. 81-2) Mr. Mashishin contacted the police and returned to the bank in time to see the robber leaving the bank. The robber was dressed in a blue jacket, brown pants and sneakers; Mr. Mashishin found a brown wool cap on the sidewalk. (D.I. 9A, Tr. 83-5)

Sometime after the robbery, the witnesses were asked by the state police to review a photographic array. On April 22, 1982, witnesses Washington, Gocella and Mashishin reviewed approximately nine black and white photographs displayed on a white billboard. The photographs were of black males, full face and profile from the neck or chest up with similar physical characteristics. Each of the witnesses viewed the display individually; no one suggested which photograph they should

6

select.  All three of these witnesses selected petitioner as the man who robbed the bank on March 25, 1982.  (D.I. 9A, Tr. 35, 54, 89-90)  Ms. Mikulcik was asked to view a photographic array on July 28, 1982.  The display included eight or nine black and white pictures, full face and profile, of black males with similar physical characteristics.  The pictures were displayed on orange index cards laid out side by side on a table.  No one suggested which photograph to select.  This witness again selected the petitioner's photograph as being that of the individual who robbed the bank on March 25, 1982.  (D.I. 9A, Tr. 77-70)  Finally, all four witnesses made in-court identifications of the petitioner as the individual who robbed the bank.  (D.I. 9A, Tr. 35-6, 53-4, 69-70, 90)

Instantly, petitioner is challenging the witnesses' identification of him as the robber.  The record demonstrates, however, that neither the pretrial nor the in-court identification procedures were impermissibly suggestive and, in fact, the identifications were reliable.  The United States Supreme Court reviewed the issue of pretrial identifications in Manson v. Brathwaite, 432 U.S. 98 (1977), a case involving the pretrial identification of a defendant by the display of a single photograph to the police undercover agent who consummated the drug deal in question.  Although the Court acknowledged that "'the procedure in the instant case was suggestive [because only one photograph was used] and unnecessary' [because there was no

7

emergency or exigent circumstances]", nevertheless the Court concluded that

> reliability is the linchpin in determining the admissibility of identification testimony. . . The factors to be considered . . . include the opportunity of a witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

Id. at 114. See also, United States v. Dunbar, 767 F.2d 72, 73-4 (3d Cir. 1985).

Even if the Court were to assume that some or all of the pretrial procedures[3] were impermissibly suggestive, the courtroom identifications of petitioner would not be excluded as a matter of law. Rather, the Supreme Court in United States v. Wade, 388 U.S. 218, 239-41 (1967) again considered various factors in determining whether an in-court identification was based upon observations of the suspect other than the "tainted confrontation"[4]:

> the prior opportunity to observe the alleged criminal act, the existence of any

---

3.  Petitioner also contends that he was seen by Washington outside the courtroom, in the custody of correctional officers, before the hearing to suppress the pretrial identification.

---

4.  In Wade, the identifying witnesses, while seated in a courtroom awaiting assembly of a lineup, saw the defendant in the custody of an FBI agent.

8

> discrepancy between any pre-lineup
> description and the defendant's actual
> description, any identification prior to
> lineup of another person, the identification
> by picture of the defendant prior to lineup,
> failure to identify the defendant on a prior
> occasion, and the lapse of time between the
> alleged act and the lineup identification.

Id. at 241.

Looking at the factors (many overlapping) outlined in Wade and Manson, it is evident that both the pretrial and courtroom identifications pass constitutional muster. Each of the witnesses had an adequate opportunity to review the robber under circumstances which focused their attention, i.e., the robbery itself. The witnesses' descriptions of the robber given to the police before the photographic identifications were consistent as to each other.[5] The witnesses testified that they were shown an array of photographs of similar looking individuals without suggestion as to which of the individuals might be a suspect. The photographic identifications were for the most part made within weeks of the robbery. Finally, the witnesses were certain of both the pretrial and courtroom identifications.

Because the identification procedures were not impermissibly suggestive and the resulting identifications were reliable, petitioner has stated no claim for relief in this regard.

---

5. There is no claim that petitioner's physical characteristics are substantially different from those given by the witnesses.

9

## Charging Decision

Since petitioner demanded money from three different bank tellers, he was charged with three counts of robbery. Petitioner now challenges on two grounds the prosecutorial decision which led to his indictment on three robbery charges. First, he claims that since the money taken from each teller was the property of just one bank, he should only have been charged with one count of robbery since there was only one victim. (D.I. 2)  He also alleges that because of his race (black), he was charged with three counts of robbery, in contrast to the charging decision in a different bank robbery in which the defendants, who were white, were charged with only one count of robbery. (D.I. 2, 12)

Petitioner did not raise these issues at trial or on direct appeal.  These issues were raised for the first time as post-conviction claims.  Although the Delaware Supreme Court noted petitioner's procedural default in it opinion, it nevertheless proceeded to address the merits of these claims, as had the Superior Court.  <u>Meades v. State</u>, No. 334, 1987 (Del. Supr. April 22, 1988) (D.I. 9A, slip op. at 2).

Respondents now argue that federal habeas review is precluded unless petitioner shows both cause for the defaults at trial and on direct appeal and actual prejudice stemming from the alleged violations.  <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977); <u>United States ex. rel. Caruso v. Zelinsky</u>, 689 F.2d 435, 440 (3d Cir. 1982).  A discussion of whether this Court is precluded from

10

reviewing petitioner's claims must begin with the decision of the Third Circuit Court of Appeals in Reynolds v. Ellingsworth, 843 F.2d 712 (3d Cir.), cert. denied, 109 S.Ct. 403 (1988).    In Reynolds, this Court determined that a procedural default in the state courts barred review of the merits of two claims raised in a petition for writ of habeas corpus challenging a state conviction.    Petitioner Reynolds had asserted that the prosecutor's extensive references in his opening statement to two confessions that were never introduced into evidence, and the failure of the trial court to give a curative instruction, denied him due process.    The Third Circuit rejected this Court's conclusion and held instead that there existed no "independent and adequate state procedural ground" that, as a matter of federal law, barred the district court from reaching the merits of the due process claim.    More specifically, the Third Circuit found that the holding in Conyers v. State, 422 A.2d 345 (Del. Supr. 1980) did not of itself impose upon Delaware Superior Court Criminal Rule 35 (generally providing for post-conviction proceedings) a requirement that all issues should be raised at the first possible opportunity unless the petitioner demonstrates reasons to rebut or excuse the presumptive wavier.    The Third Circuit limited Conyers to its procedural context, that is, Criminal Rule 41(e) of the Delaware Superior Court, which governs the time for making suppression motions.

Respondents argue first that the Reynolds decision "rests on a fundamentally erroneous reading of state law." (D.I.

11

9, ¶B3)    I decline, however, to reexamine the Third Circuit's analysis under these circumstances.

Accepting Reynolds as the law of the case, respondents argue that it nonetheless can be factually distinguished from the case at bar.    Unlike the situation in Reynolds, where the Third Circuit was unable to find a specific rule which precluded further review, respondents contend that Delaware Superior Court Criminal Rule 12(b)(2) required petitioner Meades to raise his claims prior to trial on pain of forfeiture.    And, indeed, Criminal Rule 12(b)(2) provides in pertinent part that

> [d]efenses and objections based on defects in the institution of the prosecution . . . may be raised only by motion before trial.    The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the Court for cause shown may grant relief from the waiver.

Instantly, by challenging the prosecutorial decision to charge him with three counts of robbery instead of one, petitioner Meades is challenging the "institution of prosecution" and, under Criminal Rule 12(b)(2), arguably has forfeited his right to further review of such issues absent a showing of cause and prejudice.    See, e.g., Pauls v. State, 476 A.2d 157, 159 (Del. Supr. 1984); Rossitto v. State, 287 A.2d 669, 670 (Del. Supr. 1972); Dunn v. Mayor and Council of City of Wilmington, 212 A.2d 596, 601 (Del. Super. 1965), aff'd, 219 A.2d

12

153 (Del. Supr. 1966); <u>Martin v. State</u>, 116 A.2d 685, 686 (Del. Super. 1955).

Despite this conclusion, however, I feel compelled to review the merits of petitioner's claims since the Delaware Supreme Court reached the merits of such.[6]  <u>See</u>, <u>Wainwright v. Sykes</u>, 433 U.S. at 85-86; <u>Neely v. Zimmerman</u>, 858 F.2d 144, 148 (3d Cir. 1988).  Petitioner's first contention is that the double jeopardy clause barred his conviction for three separate robberies since he took money from only one victim, the bank.  In the first instance, the applicable criminal statute, 11 Del. C. §831(a)(2), provides that

> [a] person is guilty of robbery . . . when, in the course of committing theft, he uses or threatens the immediate use of force upon another person with intent to . . . [c]ompel the owner of the property <u>or</u> <u>another</u> <u>person</u> to deliver up the property. . . .

(Emphasis added)  The statute on its face contemplates that the object of the taking is not limited to the owner of the property. Thus, in the course of a single incident, there can be more than one "victim" leading to more than one charge of robbery.  This interpretation of the statute is recognized by the State's

---

6.  In fact, that court acknowledged the procedural default issue in just one sentence inserted in the midst of its discussion on the merits.  The Delaware Superior Court reached the merits with no discussion of the presumptive waiver under Criminal Rule 12(b)(2).  (D.I. 9A, <u>State v. Meades</u>, Crim. Action Nos. IN82-05-1626; 1627; 1646; 1647 (September 11, 1987))

13

highest court[7] and, therefore, is binding on this Court. <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 690-91 (1975).

Finally, petitioner's claim of selective prosecution fails for two reasons. In order to prevail, petitioner must show that other defendants similarly situated were not charged with multiple robbery counts and that the decision to so charge him was based on an improper factor, e.g., race or religion. <u>See</u>, <u>Wayte v. United States</u>, 470 U.S. 598, 608 (1985); <u>Oyler v. Boles</u>, 368 U.S. 448, 456 (1962). To establish the first point, petitioner refers to the case of <u>Craig v. State</u>, 457 A.2d 755 (Del. Supr. 1983). However, <u>Craig</u> is factually distinct. In <u>Craig</u>, "while one robber, armed with a shotgun, stood by the door, the two others hurdled the counter and emptied the tellers' drawers, stuffing their contents into a bag." 457 A.2d at 757. Instantly, petitioner approached three separate tellers <u>seriatim</u> and, while brandishing a pistol, demanded that each teller fill his bag with money. In similar cases, the defendant has been charged with the robbery of each teller. <u>See</u>, <u>Kelly v. State</u>, No. 23, 1984 (Del. Supr. July 9, 1985) (copy attached hereto). Thus, petitioner's claim must be rejected since he has not identified a similarly situated defendant who was treated differently.

Furthermore, petitioner has not shown any discriminatory motive. His only claim of discriminatory intent

---

7. <u>See</u>, <u>Harrigan v. State</u>, 447 A.2d 1191, 1192 (Del. Supr. 1982); <u>Kile v. State</u>, 382 A.2d 243, 245 (Del. Supr. 1978); <u>McCoy v. State</u>, 361 A.2d 241, 242-43 (Del. Supr. 1976).

14

is the fact that he is black and the defendants in <u>Craig</u> were white. That alone, however, does not establish that the charging decision in his case was made "because of" his race. <u>Wayte</u>, 470 U.S. at 610. <u>See</u>, <u>Government of the Virgin Islands v. Harrigan</u>, 791 F.2d 34, 36 (3d Cir. 1986). Since petitioner has not established the two elements of a selective prosecution claim, it follows that the claim must be rejected.

For the foregoing reasons, I recommend that petitioner's application for habeas corpus relief be dismissed and the writ be denied.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT R. MEADES,                      )
                                       )
                Petitioner,            )
        v.                             )       Civil Action No. 88-233-JLL
                                       )
HOWARD YOUNG, Warden,                  )
Multi-Purpose Criminal Justice         )
Facility, and CHARLES M. OBERLY,       )
III, Attorney General of the           )
State of Delaware,                     )
                                       )
                Respondents.           )

### FINAL ORDER

The Court having (1) reviewed the U.S. Magistrate's Report and Recommendation which recommends that this habeas corpus action of a state prisoner be dismissed (Docket Item ["D.I."] 13), and (2) noted that no objection has been timely fled, it is

ORDERED:

1.    The Magistrate's Report, dated March 14, 1989 (D.I. 13), is hereby accepted and adopted by this Court.

2.    The petition for a writ of habeas corpus is hereby dismissed and the writ is hereby denied.

3.    No probable cause exists for an appeal.

4.    The Clerk shall mail a copy of this order to the plaintiff and to Loren C. Meyers, Deputy Attorney General, Delaware Department of Justice.

Dated:  April 5, 1989.

_____
United States District Judge

APS-72                                          June 8, 1989

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

### C.A. No. 89-3280

ROBERT R. MEADES

    vs.

HOWARD YOUNG, WARDEN, ET AL.

      (D.Del. Civ. No. 88-00233)

Present: BECKER, GREENBERG and SEITZ, CIRCUIT JUDGES

        Submitted is appellant's request for a certificate of probable cause pursuant to Rule 22(b), Federal Rules of Appellate Procedure

in the above-captioned case.

          Respectfully,

          *Sally, Mrvos (PAR)*

          Clerk

SM/PAR/jm

---

The foregoing *application for a certificate of probable cause is denied.*

---

          By the Court,

          Circuit Judge

Dated: JUN 16 1989

ND/cc: RRM

       LCM

## CERTIFICATION OF SERVICE

The undersigned certifies that on July 6, 2007, he electronically filed the attached *Answer* with the Clerk of Court using CM/ECF.  The undersigned further certifies that on July 9, 2007 that he mailed by United States Postal Service the document(s) to the following non-registered participant:

Robert R. Meades
SBI No. 00124648
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/  Gregory E. Smith_____
Gregory E. Smith, ID # 3869
Deputy Attorney General
820 North French Street, 7th Floor
Carvel State Building
Wilmington, Delaware 19801
(302) 577-8398